**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IOT INNOVATIONS LLC,

Plaintiff,

v.

VTECH HOLDINGS LIMITED and VTECH TELECOMMUNICATIONS LIMITED,

Defendants.

Civil Action No. 2:26-cv-01030

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against VTech Holdings Limited and VTech Telecommunications Limited (collectively, "Defendants" or "VTech"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 9,008,055 | Automatic Remote Services Provided by a Home Relationship Between a Device and a Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |
| B. | 7,346,340 | Provision of User Policy to Terminal | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7346340. |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 7,593,428 | Apparatus, and Associated Method, for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| D. | 7,246,173 | Method and Apparatus for Classifying IP Data | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |
| E. | 7,756,073 | Method For Updating A Routing Entry | USPTO.gov, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7756073 |
| F. | 7,161,960 | Apparatus, and Associated Method, for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.gov, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7161960 |

2. IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Plaintiff IoT Innovations LLC acquired the Asserted Patents from Intellectual Ventures pursuant to a Patent Sale Agreement dated July 27, 2022. The assignments were recorded with the United States Patent and Trademark Office, and IoT Innovations LLC is the sole owner of all right, title, and interest in each of the Asserted Patents, including the right to sue for past, present, and future infringement and to collect damages therefor.

5. Upon information and belief, Defendant VTech Holdings Limited is a multinational corporation organized under the laws of Bermuda with its principal place of business located at 23/F, Tai Ping Industrial Centre, Block 1, 57 Ting Kok Road, Tai Po, New Territories, Hong Kong SAR, China.

6. Upon information and belief, VTech Holdings Limited is the parent company in the VTech corporate family, and its controlled subsidiaries including but not limited to VTech Telecommunications Limited.

7. Upon information and belief, VTech Telecommunications Limited is a corporation organized and existing under the laws of Hong Kong with its principal place of business located at 23/F, Tai Ping Industrial Centre, Block 1, 57 Ting Kok Road, Tai Po, New Territories, Hong Kong SAR, China.

8. Upon information and belief, Defendants own, operate, advertise, and/or control at least the websites http://vtech.com, http://leapfrog.com, and http://snom.com (and related domains), through which they advertise, sell, offer to sell, provide, and/or educate customers about their products and services, including the Accused Products.

**JURISDICTION AND VENUE**

9. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

10. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

11. This Court has personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendants have done and continue to do business in the United States, including in the State of Texas; (ii) Defendants have committed and continue to commit acts of patent infringement in the United States, including in the State of Texas, including making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas, including by Internet

sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in the United States and Texas, and/or committing at least a portion of any other infringements alleged herein.

12. Defendants are subject to this Court's specific personal jurisdiction under due process due at least to Defendants' substantial business in this judicial district, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

13. Specifically, Defendants intend to do and do business in, and have committed acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, by contributing to and through their inducement of third parties, and offering their products or services, including those accused of infringement here, to customers and potential customers located in this District.

14. Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly) their products within this District. For example, upon information and belief, Defendants have placed their products into the stream of commerce via an established distribution channel, with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. Defendants are subject to this Court's specific personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and District, including their infringing activities alleged herein, from which Defendants derive substantial revenue from goods sold to residents and consumers.

15. Defendants sell, offer for sale, use, make, and/or import products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendants have committed acts of infringement in the Eastern District of Texas, have conducted business in the Eastern District of Texas, and/or have engaged in continuous and systematic activities in the Eastern District of Texas.

16. In addition, or in the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

18. Defendants' Accused Products are distributed to end users in this District through, among other channels, Walmart retail stores (including locations in Marshall, Tyler, and Longview, Texas), Amazon.com fulfillment centers servicing the Eastern District of Texas, and Target retail stores located within this District.

19. On Defendants' U.S.-directed website, VTECH.COM, https://www.vtech.com/us/en, Defendants state that "VTech is a global leader in electronic learning products for children and a leading supplier of residential telecommunication products" and "enriches the lives of families through technology."

20. Defendants operate "[w]ith a global workforce of approximately 20,000 employees in 19 countries and regions, [and] maintains R&D centres, manufacturing operations and sales subsidiaries across the Americas, Europe and Asia." Annual Report 2025, VTECH.COM,

https://www.vtech.com/wp-content/uploads/2026/06/AR2026_eng.pdf, at 2.

21. In 2026, Defendants' United States sales totaled approximately US $2.03 billion; in the United States, Defendants held tangible and intangible assets in significant tangible and intangible assets. *Id.* at 5.

22. Defendants offer products bearing several brands, among them VTech, LeapFrog, Snom, InnoTab, and Kidizoom. VTech is a leading global supplier of corded and cordless phones and electronic learning products, and is the world's largest manufacturer of cordless phones. Vtech's primary consumer brands include VTech (cordless telephones, baby monitors, and residential telecommunication products), Snom (enterprise IP phones), Gigaset (cordless and mobile telephony), and LeapFrog (educational electronics for children). *See* VTECH.COM, https://www.vtech.com/en/.

23. Within the VTech corporate family, VTech Holdings Limited serves as the parent company and is the ultimate parent company of the VTech group. *See, e.g.*, Annual Report 2025, VTECH.COM, https://www.vtech.com/wp-content/uploads/2026/06/AR2026_eng.pdf, at 2, 30.

24. U.S. consumers can purchase Defendants' VTech and LeapFrog brand products, including the Accused Products, through the VTech and LeapFrog websites, including https://www.vtechkids.com/en-us and https://www.vtech.com/en-us, which provide e-commerce functionality allowing consumers to purchase products directly.

25. Through offers to sell, sales, imports, distributions, and other related agreements with controlled subsidiaries, distributors, and customers operating in and maintaining a significant business presence in the United States, Defendants do business in the United States, the State of Texas, and the Eastern District of Texas. United States customers, including customers in Texas and in this District, can purchase Defendants' VTech and LeapFrog brand products through

Defendants' websites and through U.S. retailers, including retailers with locations in this District.

26. Defendants have committed acts of direct and/or indirect patent infringement in this District, in Texas, and throughout the United States, giving rise to this action. As such, Defendants have sufficient minimum contacts with Texas such that personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

## THE ACCUSED PRODUCTS

27. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

28. Based upon public information, Defendants own, operate, and/or control the websites and domains http://vtech.com, http://leapfrog.com, and http://snom.com, through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

29. Defendants make, use, sell, offer to sell, and/or import into the United States the following products and services, together with all substantially similar products and services offered in the past or future, including all prior models, iterations, releases, versions, generations, and prototypes thereof (collectively, the "Accused Products"): (a) Wi-Fi IP cameras and baby monitors used with the MyVTech Cams mobile application and its associated camera account and remote-monitoring services, including the VTech VC931 Wi-Fi IP Camera and the VC931-12, VC931-14, VC9311-112, VC921, VC9411, VC9411-2, VC9411-12, VC9411-22, VC9511, VC9511-2, VC9511-3, VC9511-11, VC9511-21, VM901, VM901-1W, RM9751, and RM5752; (b) LTE-enabled mobile phones offered through Defendants' Gigaset business, including the Gigaset GL30 Mobile Phone and the Gigaset GL40, GL795, GL695, COMFORT 600 SIM, GX4 PRO, GX30, GX50, GS6, GX6 PRO, GX6, GS280, GS100, GS160, GS110, GS185, GS5 PRO, GX290 PRO, GLX8 PLUS, GLX8, GLX8 ACTIVE, GS370, GS370 PLUS, GS270, GS270 PLUS,

GS190, GS195, and GS5 LITE; (c) IEEE 802.11n Wi-Fi video monitors, cameras, and devices, including the VTech VM981 Wi-Fi HD Video Monitor and the VTech RM9751, RM2851, RM2851-2, RM5754HD, RM5754-2HD, RM901 HD, RM901-2HD, RM7754HD, RM7754-2HD, RM5864HD, RM5766HD, RM5766-2HD, RM5752, RM7764, RM7764-2, RM7866, RM7866-2, RM5887HD, RM5856HD, RM5856-2HD, RM7766, RM7766-2, VC2105, VM990, VM991, RM5756HD, RM5756HD-2, RM5762, RM5764HD, RM5764-2HD, RM7756HD, and RM7756-2HD, and the LeapFrog LeapPad Ultimate, LeapPad Ultimate Ready for School, LF815HD, LF815-2HD, LF1911, LF2936HD, LF2936-2HD, LF2911, LF930HD, LF930-2HD, LF925HD, and LF925-2HD; (d) IPv6-capable SIP telephones, including the VTech VSP736 ErisTerminal IP Phone (with its paired VSP601 DECT cordless handset) and the VTech VSP716A SIP Entry Level Deskset, VSP726A SIP Deskset, VSP610 cordless handsets, VSP861 SIP Deskset, ET605 SIP Deskset, and ET635 SIP Deskset, the Gigaset N870 IP Pro, Maxwell 10, and Maxwell 10S, and the Snom D865, D862, 892M, D140, D150, D120, D385, D735, D713, and D712; and (e) mobile applications using two-factor, one-time-passcode authentication, including the MyVTech Baby Plus application (used with Defendants' RM- and VC-series baby monitors), the MyVTech Baby Pro application, and the LeapFrog Baby Care application.

30. Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products.

31. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: ACTUAL NOTICE AND WILLFUL INFRINGEMENT**

32. On September 18, 2026, IoT Innovations, through its counsel, sent a written notice letter to VTech Holdings Limited at its principal place of business in Tai Po, New Territories,

Hong Kong, addressed to Chang Yu Wai in his capacity as Company Secretary. The letter was transmitted via FedEx International Priority with Direct Signature Required and identified the IoT Innovations patent portfolio, including each of the Asserted Patents, and placed VTech Holdings Limited on actual notice of its potential infringement under 35 U.S.C. § 287(a). The letter identified each of the Asserted Patents here (U.S. Patent Nos. 9,008,055; 7,346,340; 7,593,428; 7,246,173; 7,756,073; and 7,161,960) among the IoT Innovations patent portfolio.

33. VTech Holdings Limited received the September 18, 2026 letter, as reflected by the FedEx Direct Signature Required delivery confirmation. Despite receipt of that letter and despite the knowledge of the Asserted Patents and of IoT Innovations' infringement positions that the letter conveyed, VTech Holdings Limited and VTech Telecommunications Limited continued to make, use, sell, offer to sell, and import the Accused Products in and into the United States, including into this District, without taking a license, redesigning the Accused Products, or providing any substantive response to IoT Innovations.

34. The infringement by VTech Holdings Limited and VTech Telecommunications Limited of each of the Asserted Patents that remained unexpired as of September 18, 2026 has therefore been willful. IoT Innovations reserves the right to prove additional post-complaint willful infringement supporting an award of enhanced damages up to treble under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,008,055**

35. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36. The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015, after full and fair examination of Application No. 10/903,931, which was filed on July 29, 2004. *See* '055 patent at p. 1.

37. IoT Innovations owns all substantial rights, interest, and title in and to the ’055 patent, including the sole and exclusive right to prosecute this action and enforce the ’055 patent against infringers and to collect damages for all relevant times.

38. Because the asserted claim of the ’055 patent is directed to a method, the marking requirements of 35 U.S.C. § 287(a) do not apply.

39. The claims of the ’055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of wireless and networked device communications.

40. The written description of the ’055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. Defendants have directly infringed and continue to infringe the claims of the ’055 patent by using, providing, supplying, or distributing the Accused Products.

42. As just one example, Defendants directly infringed, either literally or under the doctrine of equivalents, claim 1 of the ’055 patent. For instance, Defendants, through the use and provision of the Accused Products, perform a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: receiving, by the server, information that was stored in the mobile device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network, wherein establishing

the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network.

43. As just one example, Defendants and/or users directed by Defendants have performed each and every step of claim 1 of the ’055 patent through the use and provision of the Accused Products, including at least the VTech VC931 Wi-Fi IP Camera and the MyVTech Cams mobile application and associated remote-monitoring services. To the extent that any step of the claimed method is performed by an end user, customer, or third-party service rather than directly by Defendants, Defendants are liable for direct infringement under 35 U.S.C. § 271(a) because Defendants direct and control performance of that step, by conditioning use of the Accused Products on performance of that step and establishing the manner or timing of that performance, and are further liable for indirect infringement under 35 U.S.C. § 271(b) because Defendants knowingly induce such performance with specific intent that the resulting conduct infringe the ’055 patent. Specifically, Defendants, through the use and provision of the Accused Products, perform a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, in which the server receives information that was stored in the mobile device when the established relationship was established—once the mobile device establishes an Internet connection through a local network that is separate and remote from the home network—where establishing the established relationship includes allowing the user to set preferences that identify at least one service to be automatically performed between the mobile device and the server when a connection is made, and where, if the mobile device is

recognized through the received information, at least one function within the server is automatically activated to initiate a transfer of data between the mobile device and the server through the local network. The MyVTech Cams mobile application transmits account login information and camera-related security identifiers to VTech's cloud service when the user's mobile device connects from a separate network, enabling automatic activation of remote-monitoring functions between the mobile device and VTech's server.

44. The Accused Products that infringe the '055 patent include the VTech VC931 Wi-Fi IP Camera, the MyVTech Cams mobile application, and associated camera account and remote-monitoring services, as well as the VTech VC931-12, VC931-14, VC9311-112, VC921, VC9411, VC9411-2, VC9411-12, VC9411-22, VC9511, VC9511-2, VC9511-3, VC9511-11, VC9511-21, VM901, VM901-1W, RM9751, and RM5752, and other substantially similar VTech Wi-Fi IP cameras and related products.

45. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above and will continue to be damaged unless such infringement is enjoined. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '055 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude

outweighs other public interests, which supports injunctive relief in this case.

47. Defendants had knowledge of the ’055 patent at least as of September 18, 2026.

48. Upon information and belief, Defendants have also indirectly infringed one or more claims of the ’055 patent by inducing others to directly infringe said claims.

49. Defendants have induced end-users, including, but not limited to, Defendants’ employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the ’055 patent by providing or requiring use of the Accused Products.

50. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent.

51. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

52. Defendants are performing these steps, which constitute induced infringement with the knowledge of the ’055 patent and with the knowledge that the induced acts constitute infringement.

53. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the ’055 patent.

54. Defendants’ inducement is ongoing.

55. Upon information and belief, Defendants have also indirectly infringed by

contributing to the infringement of the ’055 patent.

56. Defendants have contributed to the direct infringement of the ’055 patent by their personnel, contractors, and customers.

57. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent. The special features constitute a material part of the invention of one or more of the claims of the ’055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’055 patent.

58. Defendants’ contributory infringement is ongoing.

59. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

60. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

61. Defendants’ direct infringement of one or more claims of the ’055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations’ rights under the patent.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,346,340**

62. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

63. The USPTO duly issued U.S. Patent No. 7,346,340 (hereinafter, the “’340 patent”) on March 18, 2008 after full and fair examination of Application No. 11/170,100 which was filed on

June 30, 2005. *See* ’340 patent at p. 1.

64. IoT Innovations owns all substantial rights, interest, and title in and to the ’340 patent, including the sole and exclusive right to prosecute this action and enforce the ’340 patent against infringers and to collect damages for all relevant times.

65. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’340 patent.

66. The claims of the ’340 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, claim 24 of the ’340 patent recites a specific technical implementation for enforcing user-specific service policies at a visited network in a cellular packet-switched architecture—a non-abstract, technical improvement in roaming and user-policy enforcement in Evolved Packet Core (EPC) networks as standardized by the Third Generation Partnership Project (3GPP) in TS 36.300 and related specifications. The claimed invention includes inventive components that improve upon the function and operation of LTE roaming and visited-network service delivery, providing concrete, measurable improvements over the prior art in subscriber-policy enforcement and inter-operator interoperability. Under the *Alice* two-step framework, claim 24 is not directed to an abstract idea in step one, and in any event recites an inventive concept transforming any claimed abstract subject matter into a patent-eligible application sufficient to satisfy step two.

67. The written description of the ’340 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

68. Defendants directly infringed the claims of the ’340 patent by using, providing, supplying, or distributing the Accused Products.

69. As just one example, Defendants directly infringed, either literally or under the doctrine of equivalents, claim 24 of the ’340 patent. For instance, Defendants provide a user terminal for connection in a mobile communication system, the user terminal being configured to: authenticate into a visited network, wherein the visited network is distinct from a home network of the user terminal; receive an authentication success message from the visited network, wherein the authentication success message includes a user policy which is to be used by the user terminal in the visited network, and further wherein the user policy is based at least in part on a local policy of the visited network; and apply the user policy to uplink packets which are transmitted from the user terminal.

70. As just one example, Defendants, provide the Accused Products, including at least the Gigaset GL30 Mobile Phone distributed through VTech’s Gigaset business, operating in an LTE/EPC network that distinguishes between a home and a visited network. Specifically, the Accused Products embody a user terminal configured to connect in a mobile communication system that (a) authenticates into a visited network distinct from a home network of the user terminal, (b) receives an authentication success message from the visited network that includes a user policy to be used by the user terminal in the visited network, where the user policy is based at least in part on a local policy of the visited network, and (c) applies the user policy to uplink packets transmitted from the user terminal—consistent with 3GPP TS 36.300 and the GSMA LTE and EPC Roaming Guidelines.

71. The Accused Products that infringe the ’340 patent include the Gigaset GL30 Mobile

Phone and the Gigaset GL40, GL795, GL695, COMFORT 600 SIM, GX4 PRO, GX30, GX50, GS6, GX6 PRO, GX6, GS280, GS100, GS160, GS110, GS185, GS5 PRO, GX290 PRO, GLX8 PLUS, GLX8, GLX8 ACTIVE, GS370, GS370 PLUS, GS270, GS270 PLUS, GS190, GS195, and GS5 LITE.

72. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above, which occurred during the enforceable damages period ending on the expiration date of the applicable patent. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,593,428**

73. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

74. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009 after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

75. IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

76. Because the asserted claim of the '428 patent is directed to a method, the marking requirements of 35 U.S.C. § 287(a) do not apply.

77. The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

78. The claims of the ’428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

79. Defendants directly infringed the claims of the ’428 patent by using, providing, supplying, or distributing the Accused Products.

80. As just one example, Defendants directly infringed, either literally or under the doctrine of equivalents, claim 14 of the ’428 patent. For instance, Defendants, through the use and provision of the Accused Products, perform a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

81. As just one example, Defendants performed each step of claim 14 of the ’428 patent

through the use and provision of the Accused Products, including at least the VTech VM981 Wi-Fi HD Video Monitor operating in accordance with IEEE 802.11n. Specifically, Defendants, through the use and provision of the Accused Products, perform a method in which a transceiver station receives data from a data source and, in response to programmed instructions in processing circuitry at the transceiver station, selects a first portion of the data to be protected by a first checksum and selects a second portion of the data to be protected by a second checksum, performs a first checksum calculation upon the selected first portion, and performs at least a second checksum calculation upon the selected second portion—practiced through the IEEE 802.11n A-MPDU aggregation and subframe-delimiter scheme used in the VM981 to protect MPDU delimiter fields and the MPDU Frame Check Sequence.

82. The Accused Products that infringe the '428 patent include the VTech VM981 Wi-Fi HD Video Monitor and the VTech RM9751, RM2851, RM2851-2, RM5754HD, RM5754-2HD, RM901 HD, RM901-2HD, RM7754HD, RM7754-2HD, RM5864HD, RM5766HD, RM5766-2HD, RM5752, RM7764, RM7764-2, RM7866, RM7866-2, RM5887HD, RM5856HD, RM5856-2HD, RM7766, RM7766-2, and VC2105, as well as the following products of Defendants' subsidiary LeapFrog: the LeapFrog LeapPad Ultimate, LeapPad Ultimate Ready for School, LF815HD, LF815-2HD, LF1911, LF2936HD, LF2936-2HD, LF2911, LF930HD, LF930-2HD, LF925HD, and LF925-2HD.

83. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above, which occurred during the enforceable damages period ending on the expiration date of the applicable patent. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,246,173**

84. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

85. The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

86. IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

87. The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, claim 1 of the '173 patent recites a specific technical implementation for classifying Internet Protocol data at a node of a packet-switched network based on an entry contained in the packet header—a concrete, non-abstract improvement in the operation of IPv6 nodes and the Differentiated Services (DiffServ) architecture. The claimed invention includes inventive components that improve upon the function and operation of per-hop packet classification, quality-of-service delivery, and traffic-class signaling over IPv6 networks, as reflected in RFC 2474 and RFC 3168. Under the *Alice* two-step framework, claim 1 is not directed to an abstract idea in step one, and in any event recites an inventive concept transforming any claimed abstract subject matter into a patent-eligible application sufficient to satisfy step two.

88. The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

89. Defendants directly infringed one or more claims of the ’173 patent by using, providing, supplying, or distributing the Accused Products.

90. As just one example, Defendants directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’173 patent. Defendants have performed each and every step of claim 1 of the ’173 patent through the use and provision of the Accused Products. For instance, Defendants, through the use and provision of the Accused Products, perform a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

91. The Accused Products that infringe the ’173 patent include the VTech VSP736 ErisTerminal IP Phone (including as used with its paired VSP601 DECT cordless handset) and the VTech VSP716A SIP Entry Level Deskset, VSP726A SIP Deskset, VSP610 cordless handsets, VSP861 SIP Deskset, ET605 SIP Deskset, and ET635 SIP Deskset; the Gigaset N870 IP Pro, Gigaset Maxwell 10, and Gigaset Maxwell 10S; and the Snom D865, D862, 892M, D140, D150, D120, D385, D735, D713, and D712, together with all versions of these products having the same functionality.

92. As just one example, the Accused VTech VSP736 ErisTerminal IP phone, acting as the “first node” in the claimed method, received and processed Internet Protocol data packets in a packet-switched network. The VSP736 is a native IPv6 endpoint that originates and receives SIP

signaling and RTP voice packets bearing an IPv6 header. As defined in RFC 2474 and RFC 3168, the IPv6 header contains an eight-bit Traffic Class field used by network endpoints and intermediate nodes for Differentiated Services (DiffServ) classification. The VSP736 is configured by Defendants' firmware and Administrator and Provisioning Manual to assign Differentiated Services Code Point (DSCP) values to separate and prioritize voice data (RTP) from call-control data (SIP signaling), thereby classifying the data at the first node based on an entry in the header, satisfying the claimed element.

93. Because the asserted claim of the '173 patent is directed to a method, the marking requirements of 35 U.S.C. § 287(a) do not apply.

94. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above, which occurred during the enforceable damages period ending on the expiration date of the applicable patent. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,756,073**

95. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96. The USPTO duly issued U.S. Patent No. 7,756,073 (hereinafter, the "'073 patent") on July 13, 2010, after full and fair examination of Application No. 10/247,567, which was filed on September 20, 2002. *See* '073 patent at 1.

97. IoT Innovations owns all substantial rights, interest, and title in and to the '073 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

98. The claims of the ’073 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, claim 1 of the ’073 patent recites a specific technical implementation for updating a routing entry in a network node using an update request that incorporates a one-time-passcode credential retrieved from a secondary channel—a concrete, non-abstract improvement in secure network routing and multi-factor authentication protocols. The claimed invention includes inventive components that improve upon the function and operation of secure routing updates and credential-bound node-to-node communications. Under the *Alice* two-step framework, claim 1 is not directed to an abstract idea in step one, and in any event recites an inventive concept transforming any claimed abstract subject matter into a patent-eligible application sufficient to satisfy step two.

99. The written description of the ’073 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100. Defendants directly infringe and continue to directly infringe one or more claims of the ’073 patent by using, providing, supplying, or distributing the Accused Products.

101. As just one example, Defendants directly infringe and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the ’073 patent. For instance, Defendants, through the use and provision of the Accused Products, perform a method, comprising: requesting a routing entry update, by a first node of a network, to a second node of the network, wherein said update request includes an identification of the update request; submitting request verification information, associated with said identification of the update

request, from said first node to at least one routing node of the network; transmitting a request for verification of said routing entry update from said second node to said routing node using said identification of the update request; and retrieving said request verification information from said routing node based on said identification of the update request.

102. Defendants and/or users directed by Defendants have performed each and every step of claim 1 of the ’073 patent through the use and provision of the Accused Products. To the extent that any step of the claimed method is performed by an end user, customer, or third-party service rather than directly by Defendants, Defendants are liable for direct infringement under 35 U.S.C. § 271(a) because Defendants direct and control performance of that step, by conditioning use of the Accused Products on performance of that step and establishing the manner or timing of that performance, and are further liable for indirect infringement under 35 U.S.C. § 271(b) because Defendants knowingly induce such performance with specific intent that the resulting conduct infringe the ’073 patent.

103. The Accused Products that infringe the ’073 patent include the MyVTech Baby Plus mobile application, which is compatible with Defendants’ RM- and VC-series baby monitors, the MyVTech Baby Pro application, and the LeapFrog Baby Care application offered by Defendants’ subsidiary LeapFrog.

104. In the alternative and/or additionally, Defendants induced infringement of the ’073 patent under 35 U.S.C. § 271(b). Defendants had knowledge of the ’073 patent by no later than September 18, 2026 (when IoT Innovations' notice letter was received by VTech Holdings Limited), and in any event by the filing of this Complaint. With that knowledge, Defendants specifically intended to cause their customers, end users, and distribution partners to infringe the ’073 patent by providing the Accused MyVTech Baby Plus application together with user manuals,

firmware configurations, promotional materials, technical support, and online documentation instructing the use of each infringing feature. Defendants' customers and end users have directly infringed the '073 patent by using the Accused Products in the manner intended, instructed, and promoted by Defendants.

105. As just one example, Defendants, through the use and provision of the MyVTech Baby Plus mobile application (compatible with VTech's RM- and VC-series baby monitors), performed a method in which a first node of a network requested a routing entry update to a second node of the network, where the update request included an identification of the update request—for instance, when a user initiated sign-in or a password change, the application sent a request to VTech's authentication server identifying the update request. Request-verification information was then submitted from the first node to at least one routing node of the network through VTech's two-factor authentication flow, a request for verification of the routing entry update was transmitted from the second node to the routing node using the identification of the update request, and the request-verification information—the one-time passcode sent to the user's registered email address—was retrieved from the routing node based on the identification of the update request. Certain of these steps were performed through end-user conduct that VTech directed and controlled through the application's design and user prompts, and VTech additionally induced those end users to perform those steps.

106. Because the asserted claim of the '073 patent is directed to a method, the marking requirements of 35 U.S.C. § 287(a) do not apply.

107. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above, which occurred during the enforceable damages period ending on the expiration date of the applicable patent. Thus, Defendants are liable to IoT Innovations in an amount that

compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

108. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '073 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

109. Defendants had knowledge of the '073 patent at least as of September 18, 2026.

110. Upon information and belief, Defendants have also indirectly infringed one or more claims of the '073 patent by inducing others to directly infringe said claims.

111. Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '073 patent by providing or requiring use of the Accused Products.

112. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '073 patent, including, for example, claim 1 of the '073 patent.

113. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in

an infringing manner.

114. Defendants are performing these steps, which constitute induced infringement with the knowledge of the ’073 patent and with the knowledge that the induced acts constitute infringement.

115. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the ’073 patent.

116. Defendants’ inducement is ongoing.

117. Upon information and belief, Defendants have also indirectly infringed by contributing to the infringement of the ’073 patent.

118. Defendants have contributed to the direct infringement of the ’073 patent by their personnel, contractors, and customers.

119. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’073 patent, including, for example, claim 1 of the ’073 patent. The special features constitute a material part of the invention of one or more of the claims of the ’073 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’073 patent.

120. Defendants’ contributory infringement is ongoing.

121. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

122. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

123. Defendants' direct infringement of one or more claims of the '073 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,161,960**

124. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

125. The USPTO duly issued U.S. Patent No. 7,161,960 (hereinafter, the "'960 patent") on January 9, 2007, after full and fair examination of Application No. 10/106,468, which was filed on March 26, 2002. *See* '960 patent at 1.

126. IoT Innovations owns all substantial rights, interest, and title in and to the '960 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

127. The claims of the '960 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, claim 16 of the '960 patent recites a specific technical implementation for wireless MAC-layer frame aggregation with per-subframe integrity verification—a concrete, non-abstract improvement in the operation of wireless packet communication systems as standardized in IEEE 802.11n. The claimed invention includes inventive components that improve upon the function, efficiency, and reliability of aggregated MAC Protocol Data Unit (A-MPDU) transmissions by use of an MPDU delimiter cyclic redundancy check in combination with a Frame Check Sequence, enabling robust per-subframe error detection without discarding the entire aggregate on a single bit error. Under the *Alice* two-step framework, claim 16 is not directed to an abstract idea in step one, and in any event recites an inventive concept transforming any claimed abstract subject matter into a patent-eligible

application sufficient to satisfy step two.

128. The written description of the ’960 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

129. Defendants directly infringed one or more claims of the ’960 patent by using, providing, supplying, or distributing the Accused Products.

130. As just one example, Defendants directly infringed, either literally or under the doctrine of equivalents, at least claim 16 of the ’960 patent. Defendants have performed each and every step of claim 16 of the ’960 patent through the use and provision of the Accused Products. For instance, Defendants, through the use and provision of the Accused Products, perform a method of communicating in a packet communication system having a first communication station for sending data formatted into a packet-formatted data packet pursuant to a selected packet formatting protocol upon a communication channel, the packet-formatted data packet having a header part and a payload part, an improvement of a method for selectably protecting a first selected portion of the data packet by a first selected checksum and at least a second selected portion of the data packet by a second selected checksum, said method comprising: selecting a first part of the data used to form the packet-formatted data packet to form the first selected portion to be protected by a first checksum and at least a second part of the data used to form the packet-formatted data packet to form the at least the second selected portion; performing a first checksum calculation upon the first part and at least a second checksum calculation upon the at least the second part; and formatting the data into a packet-formatted data packet to include a first portion

identifying the first selected portion and indicia associated with the first selected checksum and at least a second portion identifying the second selected portion and indicia associated with the at least the second selected checksum.

131. The Accused Products that infringe the ’960 patent include the VTech VM981 Wi-Fi HD Video Monitor and the VTech RM9751, RM2851, RM2851-2, RM5754HD, RM5754-2HD, RM901 HD, RM901-2HD, RM7754HD, RM7754-2HD, RM5864HD, RM5766HD, RM5766-2HD, RM5752, RM7764, RM7764-2, RM7866, RM7866-2, RM5887HD, RM5856HD, RM5856-2HD, RM7766, RM7766-2, VC2105, VM990, VM991, RM5756HD, RM5756HD-2, RM5762, RM5764HD, RM5764-2HD, RM7756HD, and RM7756-2HD, as well as the following products of Defendants’ subsidiary LeapFrog: the LeapFrog LeapPad Ultimate, LeapPad Ultimate Ready for School, LF815HD, LF815-2HD, LF1911, LF2936HD, LF2936-2HD, LF2911, LF930HD, LF930-2HD, LF925HD, and LF925-2HD.

132. As just one example, the Accused VTech VM981 Wi-Fi HD Video Monitor, operating in accordance with IEEE 802.11n, performed the improvement set out in claim 16 of the ’960 patent in a method of communicating in a packet communication system. The VM981 transmitted video data in packet-formatted data packets having a header part and a payload part. In doing so, the VM981 selected a first part of the data to form a first selected portion to be protected by a first checksum and at least a second part of the data to form a second selected portion to be protected by at least a second checksum, performed a first checksum calculation upon the first part and at least a second checksum calculation upon the second part, and formatted the data into a packet-formatted data packet (an 802.11n A-MPDU subframe) that included a first portion identifying the first selected portion and indicia associated with the first selected checksum (the MPDU delimiter CRC field) and at least a second portion identifying the second selected portion and indicia

associated with the at least the second selected checksum (the MPDU Frame Check Sequence).

133. Because the asserted claim of the ’960 patent is directed to a method, the marking requirements of 35 U.S.C. § 287(a) do not apply.

134. IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above, which occurred during the enforceable damages period ending on the expiration date of the applicable patent. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

135. IoT Innovations hereby demands a trial by jury on all issues so triable by right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

136. IoT Innovations requests that the Court find in its favor and against Defendants, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the ’055 patent and ’073 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c. Judgment that Defendants account for and pay to IoT Innovations all damages to and

costs incurred by IoT Innovations because of Defendants' infringing activities and other conduct complained of herein;

d. Judgment that Defendants' infringements be found willful as to the '055 patent and '073 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 13, 2026

Respectfully submitted,

*/s/ James F. McDonough, III*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

* admitted to the Eastern District of Texas